O'NIELL, C. J. Appellant was convicted of the offense of selling intoxicating liquor for beverage purposes. The only question propounded is whether he was entitled to be informed, in response to a motion for a bill of particulars, of the name or identity of the person alleged to have bought the liquor, provided he was a nonresident or stranger in the parish, or was biased or prejudiced against, or an enemy of the defendant. The question was answered in the negative in the case of State v. Hebert (No. 27442) 107 So. 123,[1] decided to-day. For the reasons given in that case,

The conviction and sentence are affirmed.

---

(107 So. 126)

No. 27362.

WILLIAMS et al. v. POLICE JURY OF CONCORDIA PARISH et al.

(Jan. 4, 1926. Rehearing Denied Feb. 1, 1926.)

*(Syllabus by Editorial Staff.)*

1. Highways ⬢130½, New, Vol. 12A Key-No. Series—In suit to restrain expenditure for road work, election of grounds of attack not required.

Where taxpayers of certain ward brought suit on two grounds to enjoin police jury from making certain expenditures for roads, they did not have to elect which ground they would proceed on, having right to allege all grounds of attack available and to be heard on them as a whole.

2. Appeal and error ⬢1039(9)—Error in requiring election of grounds in suit against police jury held unimportant.

Where taxpayers of certain ward brought suit on two grounds to enjoin police jury from making certain expenditures for roads, and were required to elect ground on which they would proceed, error in requiring such election was harmless, when exception of no cause of action was sustained, and issue as to election could be reviewed on face of petition.

3. Counties ⬢41—Parishes; acts of de facto members of police jury held valid as to public.

In suit to enjoin police jury from making certain expenditures for roads, where certain

members thereof were not qualified as such, *held*, they were de facto officers, and their acts were valid in so far as they concerned the public or the rights of third persons.

4. Officers ⬢80—Right of de facto officer to exercise function of office cannot be attacked collaterally.

Right of de facto officer to exercise functions of office cannot be attacked collaterally; a direct proceeding to try title to office being necessary.

5. Highways ⬢99¼—Police jury held not to have abused power in apportioning expenditures from bond issue for roads.

Police jury did not abuse power, where, in making expenditures from bond issue, it expended a considerable sum on roads of certain ward which contained one-fourth of qualified voters and one-fifth the total property valuation of parish, but did not build gravel highway therein as was done in certain other wards.

6. Highways ⬢99—Police juries have large discretion in building and caring for roads.

Police juries are vested with large discretion in exercising their authority to lay out, establish, build, and maintain public roads within limitations of their respective parishes.

7. Counties ⬢47—Parishes; police juries clothed with legislative and executive functions.

Police juries are clothed with both legislative and executive functions.

8. Constitutional law ⬢73—Courts will not interfere with exercise of police jury's discretion, except to prevent fraud and oppression.

Courts will not interfere with police juries in exercise of their discretion in establishing and maintaining public roads, except for prevention of fraud, oppression, or gross abuse of power, as such intermeddling would be invasion of other departments by judiciary.

9. Constitutional law ⬢291—Police jury held not to deprive taxpayers of property in locating roads.

Police jury, in exercising its discretion in proceedings not open to collateral attack, as to location and building of certain roads out of bond issue, authorized at special election, and legality of which could not be attacked, did not deprive taxpayers of certain ward of property without due process of law merely because no graveled road was built therein.

---

[1] Ante, p. 316.

**10. Counties** ⊙⟶49—**Parishes; pre-election promise of member of police jury held unenforceable.**

Promise to build graveled highway through certain ward, made by member of police jury before election on bond issue, *held* unenforceable, since police jury can act legally only through medium of ordinances and resolutions.

Appeal from Seventh Judicial District Court, Parish of Concordia; R. M. Taliaferro, Judge.

Suit by T. J. Williams and others against the Police Jury of Concordia Parish and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

G. P. Bullis, of Vidalia, for appellants.

Jos. M. Reeves, Dist. Atty., Hugh Tullis, and Dale, Young & Dale, all of Vidalia, for appellees.

LAND, J. On May 25, 1925, plaintiffs, who are property owners and taxpayers residing in the Tenth ward of Concordia parish, instituted the present suit to enjoin the police jury of said parish from issuing, selling, or delivering bonds to the amount of $75,000 for the purpose of building highways in the Second, Third, Fourth, and Sixth wards of Concordia parish, and also to restrain E. H. Lancaster and Clyde Falkenheimer from acting as police jurors of said parish.

Plaintiffs allege that, out of an issue of $800,000 of parish bonds, authorized by the electors of Concordia parish at a special parish-wide election held in the year 1919, the police jury of said parish has issued $650,-000 of said bonds, and, with the proceeds thereof, has built graveled highways from Vidalia to Black river at Jonesville along the Louisiana & Arkansas Railroad, from Vidalia south for about 10 miles along the Mississippi river, and from Ferriday to Clayton, and to the Tensas parish line, and from Wildsville south for about three miles. Plaintiffs further allege that on April 25, 1925, said police jury adopted resolutions providing for the issuance of the remaining $150,000 of said bonds, and stipulating that said sum should be expended as follows: $75,000 to build a graveled highway south from Wildsville through the Ninth ward, $50,000 to build an extension south to the present highway leading south from Vidalia along the Mississippi river, and $25,000 to build a graveled highway along the south bank of Lake St. John in ward 6.

Plaintiffs allege that said police jury levied a tax of 1½ mills on all taxable property in Concordia parish to pay said bonds and their interest, and that all of said bonds to the amount of $800,000, authorized as aforesaid, are a lien upon and are payable by taxes on all the taxable property of said parish.

Plaintiffs attack the resolutions apportioning said funds as null and void on the following grounds, to wit:

(1) That Lancaster and Falkenheimer, who participated in the proceedings of the police jury on April 26, 1925, when the resolutions for the apportionment of said bonds were adopted, were not legally qualified jurors, and that, without their votes, said resolution would not have been adopted by a majority of said police jury.

(2) That the apportionment of said bonds is grossly unfair and unreasonable, and is a gross abuse of the power and discretion vested in said police jury, and is an oppression of and destruction of the rights of petitioners and residents of the Tenth ward of Concordia parish, and is such a serious and flagrant violation of the lawful duties of said police jury, and such an illegal and unwarranted expenditure of public funds, as to entitle petitioners to relief.

(3) That said action of the police jury deprives petitioners of their property without due process of law, in violation of the Constitutions of the United States and of the state of Louisiana.

(4) Because the $150,000 of said parish bonds apportioned by the police jury by resolution on April 26, 1925, constituted the remaining bonds of a bond issue of $800,000, which was approved and authorized by the votes of the electors of Concordia parish at a special election held in the year 1919, "upon the promise made by the said police jury and the proponents of said bond issue that from the proceeds of said bond issue a graveled highway would be built through the Tenth ward to New Era, and, on the faith of this promise, the electors of the Tenth ward voted almost unanimously for said bond issue, and, had it not been for the promise and understanding that such a highway would be built to New Era, the said bond issue would not have been authorized by the electors of Concordia parish."

As to the apportionment of $75,000 for building a highway south from Wildsville, plaintiffs allege that it will not be sufficient to build a graveled highway into or through said Tenth ward, except possibly for a very short distance, less than a mile, in said ward, and probably will not be sufficient to build a highway even to the Tenth ward.

As to the apportionment of $50,000, to be spent in extending the present highway leading from Vidalia through Willetts in the Fourth ward of said parish, plaintiffs allege that said extension would pass through the Third ward and into the Second ward of said parish, and would not pass the residence of any legally qualified voter of Concordia parish, and the residence of only one white resident of said ward, and that in the said two wards there are only three qualified voters, and little farming or other business, and no industries.

Plaintiffs allege that said extension would not benefit the residents of the First ward living south of the extension, for the reason that between the First ward and the end of said extension is the Bougere swamp, through which there is no highway passable during the rainy season, and that during the dry season no improved roads are necessary.

Plaintiffs also allege that through the First, Second, and Third and Fourth wards of Concordia parish runs the Texas & Pacific Railway, and that said proposed extension would merely parallel and duplicate transportation facilities of said railway.

As to the apportionment of $25,000 to be used in building a graveled highway along the south bank of the Lake St. John in the Sixth ward of said parish, plaintiffs allege that said extension would not reach or pass the residence of any legally qualified voters of Concordia parish, and that there are six legally qualified voters of said parish who live beyond this highway in the Sixth ward, and who would use it to reach their houses.

Plaintiffs allege that, for these reasons, and because the Tenth ward contains about one-fourth of the legally qualified voters of Concordia parish, over 225 in number, and about one-fifth in value of the total property in the whole of said parish, and that because said ward needs a graveled highway, the apportionment as to building highways in the other wards should be set aside, and that the whole of the $100,000 should be expended in constructing a highway from Wildsville through the Ninth and Tenth wards, as said sum would be sufficient, with the amounts previously expended, to build a highway nearly through the Tenth ward, so as to enable "*all* of the inhabitants of the Tenth ward *at all times* of the year to reach Wildsville."

Plaintiffs allege that the police jury has already expended considerable funds in doing dirt work and building branches and culverts on the main highways, which are dirt roads, through said Tenth ward.

A temporary restraining order was issued, as prayed for by plaintiffs.

[1] Defendants filed a motion to elect as to

whether plaintiffs will proceed on the ground that the apportionment of the proceeds of $75,000 of the $150,000 bond issue is grossly unfair and unreasonable, and is a gross abuse of the power and discretion vested in said police jury, or whether they will proceed on the ground that Falkenheimer and Lancaster are not duly qualified members of said police jury, and that the proceedings of the meeting on April 26, 1925, are null and void and of no effect.

(1) The motion to elect should have been overruled, as plaintiffs clearly had the right to allege all of the grounds of attack upon the resolutions apportioning said funds, and to be heard as to all of such grounds as a whole, without pleading any of the alleged causes for nullity in the alternative.

[2] Plaintiffs elected not to proceed, on the ground that the proceedings of the meeting of the police jury on April 25, 1925, are null and void because of the participation of Falkenheimer and Lancaster therein, and their voting there when not qualified members of said police jury.

The error in sustaining the motion to elect, however, becomes unimportant, as the exceptions of no cause of action pleaded by defendant were sustained, and the issue as to election may be reviewed upon the face of the petition.

[3] If we accept as true the allegations as to the disqualifications of these two members of the police jury, for the purpose of disposing of the exception of no cause of action, it is clear that they are de facto officers, and that their acts are valid in so far as they concern the public or the rights of third persons. State v. Sadler, 51 La. Ann. 1397, 26 So. 390; State v. Moreau, 153 La. 673, 96 So. 527; State v. Orville Smith, 153 La. 577, 96 So. 127; State v. Mitchell, 153 La. 585, 96 So. 130; State v. Rini, 151 La. 163, 91 So. 664; State v. Police Jury, 120 La.

163, 45 So. 47, 14 L. R. A. (N. S.) 794, 124 Am. St. Rep. 430.

[4] It is also well settled that the right of a de facto officer to exercise the functions of an office cannot be attacked collaterally, but that a direct proceeding to try title to the office is necessary. State v. Sadler & Campbell, 51 La. Ann. 1397, 26 So. 390; State v. Schuermann, 146 La. 116, 83 So. 426; State v. Moreau, 153 La. 671, 96 So. 527; State ex rel. District Attorney v. Hingle, 124 La. 655, 50 So. 616; State v. Isaac Williams, 35 La. Ann. 742; State ex rel. Williams v. Pertsdorf, 33 La. Ann. 1411.

[5] (2) We are of the opinion that the trial judge was justified in sustaining the exceptions of no cause of action.

The charge of gross abuse of power and oppression on the part of the police jury of Concordia parish, made by plaintiffs in this case, is not borne out by the facts as alleged. It is rather an erroneous conclusion of law drawn from such facts.

Plaintiffs have not charged that the action of defendant police jury was fraudulent.

At best, plaintiffs' allegations, in the final analysis, amount to mere assertions that the police jury in this particular case has abused its discretion and acted unwisely in applying these funds to the building of the roads in question.

Plaintiffs do not allege that they have been entirely ignored by the police jury in the expenditure of this bond issue. On the contrary, they admit that considerable funds from the bond issue have already been used in their ward for road purposes.

Plaintiffs allege that their ward has an outlet to the north along the road to Wildsville, from which point a railway and graveled roads lead to all parts of the United States.

It is not possible for a police jury to build a good road in front of the property of every

duly qualified voter in a parish. It may be well deemed by such body to be its duty to construct highways, not politically, but to the best interest of the community, especially in agricultural districts largely populated by nonvoters, as a means of better transportation for the products of the farm and for those employed in the cultivation and harvesting of crops.

It may also be considered by that body necessary to establish highways in certain parts of a parish, neither thickly settled, nor greatly improved, as essential and convenient connecting links in the chain of the main highways of the parish.

The mere fact that a railroad may run through several wards of a parish does not afford to the public such means of ready and economical transportation as may be derived from the use of good roads that may parallel its tracks.

Plaintiffs confess to having received already considerable funds for road improvements, and admit that the first $75,000 apportioned may extend into the northern part of the Tenth ward practically a mile of graveled road. Yet, in addition to this, plaintiffs demand, to the detriment of other wards in the parish of Concordia, that they be denied any funds at all for road construction, and that the allotment made to them by the police jury be diverted solely to the building of a highway in the Tenth ward.

[6-8] The authority of police juries to lay out, establish, build, and maintain public roads within the limits of their respective parishes is admitted. Being small bodies, close to the people, and clothed with both legislative and executive functions, police juries are vested with large discretion in their sphere of action.

The courts therefore have declined to interfere with police juries in the exercise of the discretion vested in them, except for the prevention of fraud, oppression, or gross abuse of power, as such intermeddling would be an invasion by the judiciary of the domain of other departments of government, in violation of express constitutional prohibitions.

[9] Cruse et al. v. Police Jury of La Salle Parish, 151 La. 1056, 92 So. 679; Murphy v. Police Jury of St. Mary, 118 La. 410, 42 So. 982.

(3) We fail to see how the alleged action of the police jury in this case, in the exercise of its discretion as to the location and building of certain roads out of a bond issue, duly authorized by vote of the property owners cast at a special election ordered and held for that purpose, can be said to deprive petitioners of their property without due process of law, when no attack is made, or could be made at this date, upon the legality of the bond issue in question, and when it is apparent also that no collateral attack upon the qualifications of the members of defendant police jury can be asserted in this case to affect the legality of the resolutions apportioning the funds to the building of the roads in question.

[10] (4) We are at a loss also to understand in what way the alleged promise made by any member or members of the police jury, or by the proponents of the bond issue, to build a graveled highway through the Tenth ward to New Era, could either affect the validity of the bond issue or could operate to allocate any part of the funds derived from same to the construction of such highway. Such promise, accepting it as made, for the purpose of the exception of no cause of action, is mere political propaganda at best. Police juries can act legally only through the medium of ordinances and resolutions.

Fortunately, promises made to the uncertain voter cannot be accepted in law as bind-

ing upon the official conduct or action of members of a police jury, or upon the members of any other legislative body. The breach of such promises is to be reckoned with at the ballot box and not in the courts of this state.

The Cruse Case, 151 La. 1056, 92 So. 679, relied upon by plaintiffs, is not applicable, as in that case the police jury by ordinance submitted to the taxpayers the question of issuing bonds to build roads and by separate ordinance, adopted at the same meeting, designated the roads to be improved, and the amount to be expended on each road, and included a well-known road established for many years. It was held by the court, under this state of facts, that the proceeds of the bonds could not be used to build a new road between the termini of the road mentioned and distant at one point two miles from the old road, citing Sugar v. City of Monroe, 108 La. 677, 32 So. 961, 59 L. R. A. 723.

In the Cruse Case the police jury attempted to divert the funds to other purposes than those to which they had been expressly dedicated in the ordinance adopted by that body. The action of the police jury in the Cruse Case was official and regular, as it was by ordinance, and the court properly held that to permit the diversion of the fund to the building of another road than that designated in the ordinance, adopted by the police jury as a part of its proposed road building scheme, would be a breach of good faith upon the part of that body.

Judgment was rendered in the lower court sustaining the exception of no cause of action filed by defendant police jury, dismissing plaintiffs' suit, and reserving to defendant the right to sue plaintiffs for damages. This judgment, in our opinion, is correct.

Judgment affirmed.

O'NIELL, C. J., concurs in the decree.
THOMPSON, J., recused.