HAMITER, Justice.
An indictment was returned by the Grand Jury of Iberia Parish charging that James E. Norris “ * * * on or about January 23rd, 24th, 27th & 31st and March 1st, *370 1961 * * * did unlawfully commit the theft of $34.19, the property of Humble Oil and Refining' Company as follows: $6.10 on January 23rd; $10.88 on January 24th; $7.17 on January 27th; $5.40 on January 31st; and $4.58 on March 1st, in violation of La. R.S. 14.67: THEFT * * *”. Thereafter, in a bill of particulars furnished pursuant to a defense motion, the state explained that the theft was committed by defendant’s obtaining gasoline for and services to his motor vehicle (on the dates mentioned in the indictment) through the unauthorized and fraudulent use of an Esso credit card issued in the name of one Myron E. Harkins.
Following a jury trial the defendant was found guilty of the theft of property of the value of $34.13. And the court sentenced him to imprisonment at hard labor in the state penitentiary for a period of two years.
On this appeal the defendant relies on five bills of exceptions for a reversal of his conviction and sentence.
Bill Number 1 was taken to the court’s overruling of a motion to quash, the defendant having alleged therein that “ * * * the indictment consists of a single count charging him with five separate acts of alleged thefts on five different dates, and that said indictment should and must be quashed on the basis of duplicity.”
We entertain some doubt that the indictment is duplicitous. LRS 15:220, contained in Part XIX entitled Indictment, states: “Except as otherwise provided in this Part, it is duplicity to include in the same count two separate and distinct offenses.” Found in the same Part, and providing one of the exceptions to such general rule, is LRS 15:225, which recites: “It shall be lawful to insert several counts in the same indictment against the same defendant for any number of distinct acts of theft, and the aggregate amount of these thefts shall determine the grade of the offense charged; * * And to be considered in connection with the latter provision is LRS 14:67, which defines the crime of theft and sets forth the various grades thereof, particularly its concluding paragraph reading: “When there has been misappropriation or taking by a number of distinct acts of the offender, the aggregate of the amount of the misappropriations or takings shall determine the grade of the offense.” Clearly, under these sections distinct acts of taking are chargeable in one indictment, the total amount thereof to determine the grade of the offense.
The indictment here, in keeping with the quoted provisions, charged that the defendant was guilty of theft in an aggregate amount resulting from several distinct acts of taking; and it also recited the commission, as well as the date, of each act. True, such distinct acts were not numbered and described in separate paragraphs. However, LRS 15:219, which defines “counts”, does not state that a count must be set forth in any particular manner. It merely provides: “Counts are charges of crime joined in the same indictment, and recitals in one count need not be repeated in any subsequent count except by means of a clear and distinct reference, and the conclusion of the indictment applies to all the counts.” Hence, since the instant indictment lists separately the respective distinct acts and the amount of each a forceful argument might well be made that it contains five different counts in compliance with LRS 15 :225.
But be that as it may, and conceding for the purpose of this consideration that the indictment contains only one count inasmuch as the alleged distinct acts are not listed in separately numbered paragraphs, we are unable to conclude that the ruling complained of in bill Number 1 was erroneously rendered.
LRS 15:252 declares: “No indictment shall be quashed, set aside or dismissed for any one or more of the following defects:
“(1) That there is a misjoinder of the parties accused;
*371 “(2) That there is a misjoinder of the offenses charged in the indictment, or duplicity therein;
“ * * * If the court be of the opinion that the first and second defects or either of them exist in any indictment, it may sever such indictment into separate indictments, or into separate counts as shall be proper.” Thus, if this indictment is duplicitous, as asserted by defendant in his attack, the trial judge could have done no more than order that it be severed into separate indictments or into separate counts. Defendant requested no relief of this nature; he prayed only “that the indictment be quashed and that he be discharged without date.” (Italics ours)
Appropriate here, moreover, is LRS 15:557 which states in part: “No judgment shall be set aside, or a new trial granted by any appellate court of this state, in any criminal case, on the grounds of * * * error of any matter of pleading * * * unless in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, is prejudicial to the substantial rights of the accused, or constitutes a substantial violation of a constitutional or statutory right.” Assuming arguendo that the instant indictment is duplicitous, such error in pleading could not possibly have produced any of the mentioned prejudicial effects which would permit our setting aside the conviction and ■sentence, particularly since (as before pointed out) the instrument clearly recited the separate nature of the several alleged acts of taking which made up the whole and the date of the commission of each. Incidentally, the rule announced in the last quoted statutory provisions is recognized in 24A C.J.S. Criminal Law § 1896, p. 929 and 3 American Jurisprudence 560 and 568, verbo Appeal and Error, Sections 1005 and 1014.
Accordingly, we find no merit in bill Number 1.
 When the case came on for trial the defendant, through his counsel, offered to file a pleading in which it was stated that he “ * * * challenges the array, venire and panel, and the method of selection of both grand and petit jurors, and moves that the indictment be quashed, and that he be relieved of the necessity of standing trial before said petit jury.” The challenge and motion were predicated on defendant’s allegations that “he is informed and believes” that two members of the commission which participated in the selection of names of persons for grand and petit jury service affecting him were deputy sheriffs of Iberia Parish and, therefore, the “actions of aforesaid jury commission were and are contrary to law, null and void.” (He did not allege that those deputy sheriffs took part in the investigation of the case or otherwise acted illegally in performing their duties as commissioners.) To the offering the district attorney urged two objections, namely (1) the pleading came too late and (2) it did not allege a sufficient cause for challenging the array. The court sustained both objections, and to the rulings defense counsel reserved bill Number 2.
Pretermitting the question of the timeliness of the offering, we are of the opinion that the judge correctly excluded the pleading on the ground that it did not set forth sufficient cause for challenging the array or for the consequent annulling of the indictment. “ * * * where a jury commissioner is duly appointed and has qualified by taking the oath prescribed by law and is in actual possession of the office under color of right he is a jury commissioner de facto if not de jure, and the title to his office and his acts as such officer can not be collaterally inquired into. His acts as such are recognized as valid if they are not otherwise illegal. * * * ” State v. Kennedy, 232 La. 755, 95 So.2d 301. See also State v. Smith et al., 153 La. 577, 96 So. 127, State v. Moreau et al., 153 La. 671, 96 So. 527, State v. White, 156 La. 770, 101 So. 136, State v. Foster, 164 La. 813, *372 114 So. 696, State v. Harper, 172 La. 1067, 136 So. 54, State v. Iseringhausen, 204 La. 593, 16 So.2d 65, State v. Weston, Jr., 232 La. 766, 95 So.2d 305.
Bill Number 3 incorporates a number of overruled objections (approximately fifteen) offered by defense counsel during the interrogation by the district attorney of state witness Howell F. Reeder, a special officer and an investigator for Humble Oil Company. In the bill it is asserted that the testimony of Reeder was purely hearsay and highly prejudicial to the defendant; and that although the court eventually sustained a defense objection thereto and instructed the jury to disregard all of it (after its hearsay nature was established through cross examination) the instructions were not heeded, as is shown by the verdict rendered.
Reeder’s transcribed testimony is attached to the bill. In the course of his direct examination he stated (over defense counsel’s repeated objections) that, according to Humble Oil Company records, an Esso credit card issued to one Myron E. Harkins had been used without authority by some one other than Harkins to obtain gasoline and services in the amounts and on the dates set forth in the indictment; and that the invoices for the purchases bore the signature of this defendant. Later, Reeder admitted, during cross examination, that he did not make or keep the records referred to and had never personally examined them; that he had obtained most of the information about which he testified “straight from the bookkeeper”; and that actually he did not know all of it to be true of his own personal knowledge.
Clearly Reeder’s testimony, in the main, was hearsay. However, the transcript reveals that during the direct examination the district attorney continually admonished the witness that he should testify as to information obtained by “checking your records and by personal examination” or had “by your investigation and personal knowledge”; and that he should “restrict your answers to the records your company has and which you have had opportunity to inspect”.
Moreover, near the commencement of the district attorney’s questioning, when defendant’s first objection was made, the judge instructed the witness: “Just state what you know”. Later he forcefully announced: “I caution the Jury and I instruct you to disregard anything that he doesn’t know for himself of his own personal knowledge. Disregard anything that he knows from other people, he learned from other people. And I caution you [Reeder] to testify only to what you know.” (Brackets ours)
Ultimately, when it became apparent on cross examination that Reeder had misunderstood the legal concept of hearsay and had testified'to facts not directly within his own personal knowledge (although it appeared that he thought he knew them), the judge, at the instance of defense counsel and as requested to do, sustained an objection to the witness’ testimony, ordered all of it stricken, and directed the jury to disregard it. This direction to the jury was repeated a few moments later.
Under the described circumstances, and in view of the fact that there was ample evidence other than Reeder’s testimony to sustain the jury’s verdict (as recited in the court’s per curiam), we think that the rule enunciated in State v. Martin, 193 La. 1036, 192 So. 694 is appropriate here. In that case a witness had volunteered a prejudicial statement. Defense counsel objected to it and moved for a mistrial. The judge sustained the objection and instructed the jury to disregard the statement; but he refused to order a mistrial. In concluding that defendant’s complaint (as to the ruling) was not meritorious we said: “Defendant’s complaint is not well founded. The unsolicited statement of the witness, to which objection was made, furnishes no ground for setting aside the verdict. The *373 trial for a criminal offense can not be defeated or nullified by the act of a witness in making a statement which he should not make and for which the prosecution is not responsible. * * * ” See also State v. Goodwin, 189 La. 443, 179 So. 591, State v. Moreau et al., 200 La. 293, 7 So.2d 915, State v. Labat, 226 La. 201, 75 So.2d 333 and State v. Davis, 241 La. 974, 132 So.2d 866.
Particularly appropriate here, furthermore, is an observation contained in State v. Cooper, 223 La. 560, 66 So.2d 336. There objection was made to certain prejudicial testimony concerning a fact about which the witness manifestly had no personal knowledge. The trial judge overruled the objection and directed the witness to testify as to only what he saw. Holding that the judge’s action was insufficient to protect the defendant’s rights, we observed: “The proper procedure for the judge was to have sustained the objection and instructed the jury to disregard the statement of the witness. State v. Martin, 193 La. 1036, 192 So. 694.” In the instant case the judge correctly ruled and acted accordingly.
Further, in connection with this bill (Number 3), the defendant objected to evidence tending to show that, by the use of the Esso credit card, he had obtained petroleum products and services on occasions other than those mentioned in the indictment. In the brief here his counsel state: “Appellant concedes that evidence of such transactions would be admissible for the limited purpose of showing system, guilty knowledge and intent, but in order for such to be admissible, there must be at least some reference thereto in the opening statement. There was no such reference.”
In State v. Stahl, 236 La. 362, 107 So.2d 670 we discussed the well established jurisprudence with regard to the necessary contents of an opening statement as follows: “Article 333 of the Code of Criminal Procedure requires the district attorney to make an opening statement, in which he must explain the nature of the charge and the evidence by which he expects to prove the same. In interpreting this article this court has on numerous occasions said that the article does not mean that the district attorney must give the names of his witnesses and go into minute detail as to every shred of evidence he intends to offer on the trial, but that it is sufficient if he explains the nature of the charge and the purport of the evidence by which he expects to establish the same. [Here several decisions are cited.]” (In the Stahl case the court, in a footnote, recognized that a confession requires special mention in the opening statement if it is to be used in the course of the trial.)
The opening statement made in this prosecution by the district attorney is contained in the transcript. It discloses that therein he first explained the nature of the crime of theft as defined in the statute. Further he said, among other things, that the state would show that the defendant had committed the theft charged in the indictment by means of fraudulent conduct and practices and had an intention to permanently deprive the owner of the amount that was stolen. It is our opinion that the evidence objected to (respecting the takings on other occasions) was admissible for the purpose of proving defendant’s fraudulent conduct and practices and his intention (see LRS 15:446) referred to in the opening statement by the district attorney and that such reference was sufficient to permit its introduction.
Bill Number 4 was taken to the court’s permitting one Bean to testify to certain facts, some of which (according to the bill) were the same as those recited by the witness Reeder. The defendant seems to contend that Bean’s testimony was hearsay and, therefore, prejudicial to him. However, it is not attached to and made a part of the bill (nor is it contained in any other part of the transcript). Consequently, we are unable to pass upon either *374 the court’s ruling as to the testimony’s admissibility or its claimed prejudicial effect.
Bill Number 5 was reserved to the court’s overruling of a motion for a new trial which was based solely on errors asserted in the bills above discussed. It, therefore, presents nothing for our further consideration.
For the reasons assigned the conviction and sentence are affirmed.
FOURNET, C. J., dissents being of the opinion bill of exception No. 1 is good and defendant should be granted a new trial.
McCALEB, J., dissents from the ruling on Bill No. 1 and assigns written reasons.